Good morning, Your Honors. My name is William Frick and I represent the appellant Aftar Singh. The issue in this case is an immigration judge's flawed credibility finding that Mr. Singh was not credible. And I'd like to quote the IJ's decision from page 60 of the certified record. If truths are recollections of experienced events, whereas lies are recollections of imagined events, it follows that testimony lacking in sensory and effective information is often the product of deceit. And this is a flawed syllogism. The inference of deceit does not necessarily follow from a taciturn testimony. For instance, on page seven of the respondent's answer and at the at 129 and 130 of the certified record, Mr. Singh is asked this question. Okay, briefly tell us the events that led to your arrest in 1991. He answers briefly, as he's asked to do. He says, when the police raided our house, and I was at the house, they arrested me. That is exactly what he was asked to do to briefly describe what happened. And to hold that against him and find that that makes him not credible is not correct. What about the both the immigration judges and the IJ's conclusion that your client had given, I guess it was what, three different versions of events of what happened between the time of the arrest and nine months before he left the country? I didn't find that in the records, Your Honor. I didn't find that there were discrepancies. And that's, I think, that if you get into the specifics of what they allege are discrepancies, that they're not really there. Do you want to walk us through those? Because as I recall, for example, the IJ pointed out the fact that, you know, the testimony about the father was attacked because he was at this political rally. And then there were other, but then no, he was away, was not there at a political rally. So would you talk to us about those? Because that seems to me that would go to the heart of the matter. In that, in that particular instance, Mr. Singh had been away. He had run away after being detained by the police there. And he'd been gone for six months. He, the police came to his father's house and he wasn't there and they detained his father. The, Mr. Singh never said that he was at the house on that day. All he said in the transcript was that he was not there on that day. And I, I believe that it's an improper interpretation of what he said to, to indicate that, that he meant that he had been at that house on that day. He... But what about the fact that the country report seems to indicate that things have gotten better for minorities there in the Punjab? I, I can't, you know, we can't really address that, Your Honor. I know I, I can state from my experience, which that, that I, I have plenty of clients who flee the Punjab still for many of the same reasons that Mr. Singh did, you know, almost 20 years ago, over 20 years ago. Did he put anything in to counter that, to, to say that perhaps the country report was inaccurate or? I don't believe he did, Your Honor. We, we felt that the, that the, that the really big issue here was credibility. Every, because without credibility, an asylum client has no, has no basis. And, and so we, we feel like there's been a big mistake on the credibility and that this should be returned to an IJ for further, for further evidence regarding his credibility. Maybe I could ask you about a couple of other things. I mean, I, I'm sympathetic to your argument here because it's hard to identify one, you know, sort of independently sufficient reason that the IJ gave that, that would support the adverse credibility determination, but there are about eight different factors, which maybe if you isolated any one of them, it wouldn't be enough, but together, it just seems to, so, so one of them is, for example, just the, the weird thing about his, he just disavowed entirely what had been said in his prior application. Then he had this thing about the, his prior conviction and he, so. I think, yes, sir. I think if you take each one of these the issue about his prior application, he came to New York City in 1992. He didn't speak any English. He went to a lawyer and this lawyer prepared an asylum application for him. He, six years later, he goes to an asylum interview, six years later. The first thing he says to the asylum officer is, this is incorrect. My prior lawyer messed it up. And by the way, that asylum officer found him credible. And he, he did the same thing when he went to immigration court. The first thing he said was, this was incorrect. It's an indication of his honesty. If, if he were going to be deceitful, he, he, he would not have come clean about that. And there, there's another instance of that. When, when the immigration, when he's being asked to authenticate a letter from his father, he, he's asked, is this your father's signature? He very honestly says, no, that's not my, my father's signature, when it would have been to his advantage in, in that hearing to have said that it was. So the judge gives him no credit for that. He, the judge only, only finds that to be an indication that, that this wasn't authenticated. What about he says about his political activities? In 1991, he didn't do anything after that. And then later, the father's arrested in 92, and he says, oh, well, he was arrested. I was away from home at a political rally. That seems pretty directly inconsistent. And then, and he doesn't somehow explain that inconsistency. I thought that was interesting, too, because it's, it's, I think it's something that the, that the government brings up. And I'm looking at page eight, and it's certified of the defendant's answer, and it's certified record, page 136. Question, what was your role in these elections? Answer, we wanted to boycott these elections. Question, what did you do about this? Answer, we didn't vote. That's, that's... No, but that's different than he says when his father's arrested. So first he says, I didn't do anything. Then he said, well, I did do something, I boycotted. But then he says he was at a political rally in 92. I think he's... That, that is not doing nothing. I think he, later on in this, he, he says, what did you do during that six months? He says, I went to some rallies and, you know, said the slogans. So he, he may have gone to a rally with his friends during this time, but I don't think that that's really inconsistent with him not doing anything. He's not, he's, he's attending a rally. Did you want to save your remaining time? Yes. Yes, Your Honor. Thank you. May it please the court. My name is Andrew O'Malley. I represent the Attorney General of the United States. So the main inconsistency, supposed inconsistency, I guess I, I just don't see it. The thing that supposedly he gave three different versions about what he did between the time of the arrest and when he left. I went back and looked at each of the cited portions of the transcript. And to me, the, the story is exactly consistent. It's just, I think the immigration judge got confused about what he was trying to say. So maybe you can try to walk us through and explain why, in fact, there is an inconsistency. Yes, Your Honor. I'll note up front as well that even if the immigration judge may have been confused as to what he was trying to say, he was But what I'm saying is that I, hang on, what I'm saying is that there is no inconsistency. Yes, Your Honor. So if you want to try to explain why you think, in fact, what he said, so just give me the page so I can look at this because I read it and I didn't see the testimony being inconsistent. Yes, Your Honor. His testimony is internally inconsistent. It's also inconsistent with his written materials as to not only his whereabouts, but as to his written materials, the affidavit attached to his asylum application. He claimed that he was not home when the police raided his home in February of 1992 because he was out campaigning with his friends for the boycott election. Now, in his testimony, he claims that he left his home village. He left his parents' home right after his arrest in 1991, and he never returned. He didn't return until, well, he didn't return at all before he left. I'm just waiting for you to tell me what page to look at. Oh, yes, Your Honor. He was out campaigning with his friends at the boycott election. That's his affidavit on page 774. He testified that he was with his relatives after his first and only arrests, and there until he departed. That's on page 142 to 143. At another point, he claimed that he was staying with his relatives, but he, once in a while, he went and stayed with friends a couple of days. That's on page 165 to 66. Either way, his account doesn't square there. Either he was at home at his father's home, and he wasn't present when the police came because he was out with his friends campaigning at that time, and he was fortuitous in that, or he was in another village entirely, staying with relatives, hiding from the police. And, again, it's inconsistent as to exactly what he said. What he said was, I stayed principally with this one relative. I can't remember the name. It started with a G. But from time to time, I would stay with friends or other relatives. I was moving around constantly. But he was pretty consistent in saying, I was mainly staying with this one relative. Not that he was staying at his father's house. That doesn't square with his explanation for why he wasn't at home when his father was arrested. He could have said, I wasn't in that village. I hadn't stayed there for months because I left right after my arrest. He never said he was living at home then. At home? No, Your Honor. He said he was out campaigning with his friends, which suggests that he was fortuitous in missing the police because he was out campaigning. And, again, this was confusing. He had a full explanation. He was asked to explain it. Sorry. I mean, I'm just I'm trying to give you a chance to help me through this. He was asked to explain this inconsistency. And all he said was, I am. How is it inconsistent? He's you're saying that somehow he's supposed to be at home when the police arrive and arrest his father. His story has always been, I wasn't at home then. I was living with relatives and moving around from place to place. His story was that he was he was in hiding and he wasn't at home anymore. He never went back home. His claim in his written materials was that he wasn't there simply because he was out campaigning with it with his friends. Not that he was in hiding with with other relatives. Not that he was doing anything else. He just was fortuitous and happened. He just wasn't home because he was out campaigning at that time. It's not the suggestion that he was out hiding with relatives. And that's why the police didn't find him at that time. And again, it's also inconsistent with respect to his activities during that time period where he initially said, I did nothing after 1991. I did no political activity at all after 1991. Where is that initially? He said he did nothing after 1991. That's on page 134 of the record. His declaration said, his written declaration said he took an active part in the boycott and boycotting the campaign or the boycott campaign in 1992. That's on page 774 of the record. After he was pressed by his lawyer as to what he did in the campaign elections and petitioner's counsel mentioned this, he said we did not vote. Did you do anything else? No, nothing else. Later, he claimed when his father was arrested, he was he was at rallies and speaking to slogans. None of this adds up. Can I ask you? He vacillates between one. Can I ask you on 134, what's, do you know what happened with this correction? The, I can't figure it out. After struck, until struck. It says until and then it says after. When you read the transcripts and the immigration judge's decision, the immigration judge says when it came back, there was, you know, there's problems with the tapes. The decision came back for a decision on what to do about that. You know, there's part of the testimony that was missing, but it was just closing arguments. I'm looking at the copy that has, it says, first it says indiscernible, then it says we didn't do anything after. Then it's crossed out. Then the word until is written. Then it's crossed out and then it says after again. So who? And I'm sorry for my long explanation. My point was, if you read the immigration judge's decision, he says that the party sat down together and went through the tapes and made corrections to the transcript. And this is someone's writing while the parties are. That's right. They made transcript corrections together and everybody accepted what the transcript said. So that after is what it should say instead of the until. Okay. And again, these inconsistencies go right to the heart of Mr. Singh's claim because it goes to what he was doing when he was supposedly in hiding and the events that led up to his eventual departure from India. And this is bookended by the vague and undetailed assertions as to what happened, what his political involvement was and what happened during his arrest. And the immigration judge gave specific and concrete examples of Mr. Singh's lacking testimony. For example, he was asked to describe the circumstances of his arrest and he replied, when they raided the house, I was at the house, in the house, and they arrested me. Another example might be when he was asked what he did for the party, he said whenever there were programs, I went to the rallies. What did you do? Did you do anything else? He replied no. And again, this is exacerbated by his non-responsive answers, which the immigration judge gave specific examples of as well. Specifically, right after he got done talking about his arrest in 1991 and his attorney wanted to ask him more details of that arrest, trying to draw out more details, he launched right into my father was arrested in 1992. The specific question he was asked was, was anybody with you when you were arrested in 1991? And he said, my father was arrested in 1992. And to the immigration judge, this looked like he was just reciting a memorized claim rather than actually providing details from memory. Now, his assertion that he was still at risk was implausible in light of the country conditions, the known country conditions in evidence in the record. The country reports suggest that Sikhs in the Punjab were no longer in danger unless they were high-level militants. And by all accounts, Mr. Singh cannot be considered anything other than a low-level militant. And based on what the country conditions say, and the immigration judge says this, the concern is either he was exaggerating the role of the police or the degree to which the police were interested in him, or he was more involved in the militant separatist movement than he wanted to let on. If we move past credibility to the authentication issue, would you address that in terms of his argument that he doesn't have to authenticate, and that that's not enough to implicate the adverse credibility finding? Well, I think the authentication goes to both, and I think the immigration judge or the board's decision sort of says this. They say, you weren't even able to authenticate your documents, and that's your credibility as well. But it's also... How does that go to his credibility, as opposing counsel said? If anything, it suggests that he's not trying to be untruthful. Well, I think there's a broad problem with all of his documentary submissions in here. He submitted a claim that wasn't true, which he cited under the penalty of perjury. He changed that claim later on. And then he submits documents that he simply cannot authenticate. And, yes, there does have to be some authentication. It doesn't have to be sent to the consular's office. Testimony may be sufficient, but here there's nothing to authenticate these documents. But how would he authenticate these documents? Sure. We were looking for an envelope from which they were sent from India, some indication as to how he received them. He said he got them from his family, but he has no idea how his family got them. He has no originals. Originals go a long way. He testified that he couldn't recognize his father's signature. And, yes, he does say, I can't recognize my father's signature, but then he kind of backtracks on that, saying, well, signatures change, and maybe I don't recognize it that way, right after he had initially said, yes, I definitely can recognize my father's signature, and that's not his signature. He also didn't know the contents of these documents. They were written in English. I don't know if he didn't have them read to him or what, but he simply had no basis of knowledge of what these documents were or why they were submitted. They were simply not authenticated. And, again, that does go to the credibility determination, mostly because of his other documentary problems, the submission of the false asylum application. I see I've got about ten seconds left. Thank you. Thank you very much, Your Honors. Your Honors, I don't think that there's been any evidence or any real proof of inconsistency stated by the opposing counsel. He quoted what I quoted earlier with Mr. Singh being asked to describe his arrest, but he left out the very first word in that sentence when Mr. Singh was asked to briefly describe his arrest, and he simply followed the directions. What about the statement on 134 where the word is crossed out again? So what we are left with is that we didn't do anything after 1991 in terms of his work for the political party. I think that kind of a—I don't know how to exactly explain that, Your Honor, but if he's running from the police, he's stopped taking an active role in— his main concern is to stay away from the police, and so he's not—he may attend a rally. Well, okay, but he's asked, and I can't—I guess this is the immigrant, no, Mr. Sylvia, who's—I don't know who asked the question, but he's asked, after you were released, did you do anything for the political party in India? And the answer ends up being, no, we didn't do anything after 1991. That is inconsistent with what he ultimately said. Which is—and what he did was attend a rally? Is that—I mean, is that really—is that always going to be interpreted as, you know, something active if you go to a rally? Well, the whole point of his claim is that because of these activities, that's why he's seeking asylum. So I don't know how you can diminish the fact I didn't do anything, then I attended a rally. Either he was in or out of the game, but he can't seem to decide. I—I see your point, Your Honor. And it is the heart of his claim. That's why we're kind of pressing hard on these points. I think it's minor, and I think it's also a transcript of a tape that is— has been interpreted and was originally found to be not valid. Except the parties agreed on the final version, didn't they? They did, yes. Yes, Your Honor. Thank you. Thank you. The case just argued, Singh v. Holder, will be submitted. Thank you both for your argument this morning.
judges: Rothstein, McKEOWN, WATFORD